UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#28

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order DENYING Anti-SLAPP Motion to Strike

Before the Court is Defendant Lewis Hall's ("Defendant" or "Hall") anti-SLAPP motion to strike the California Labor Code § 1102.5 retaliation claim against him. *See* Dkt. # 28. After considering the arguments presented in the moving, opposing, and reply papers, the Court DENIES Defendant's anti-SLAPP motion to strike the § 1102.5 claim.

I.  Background

Plaintiff Carter Paysinger ("Plaintiff" or "Paysinger") is the principal of Beverly Hills High School ("BHHS"), and is the first African-American principal in the school's eighty-year history. *FAC* ¶ 1. Plaintiff asserts that he "has been the victim of a malicious campaign of discrimination and retaliation" led by the Beverly Hills Board of Education ("the Board") and two publicly-elected governing members, Hall and Lisa Korbatov. *Id.* ¶¶ 2, 8.

Plaintiff alleges that the events preceding Defendants' retaliatory campaign began in June 2013, when he received a warning from Hall that his "family would suffer professional harm and unjustified attacks and investigations if he refused to follow Mr. Hall's orders." *Id.* ¶ 23. Plaintiff asserts that he ignored these threats; and as a result, Hall contacted the District's administrative office to request Paysinger's family members' confidential personnel files. *Id.* ¶ 24. Paysinger alleges that he then filed a complaint with the Beverly Hills Unified School District ("the District") requesting it "look into the circumstances surrounding the incident." *Id.* ¶ 25. Although District policy requires that complaints remain confidential, Plaintiff asserts that the District delivered a copy of the complaint to Hall the next business day. *Id.* ¶ 26. In response to Paysinger's lodging a complaint, Hall allegedly began his retaliatory campaign. *See id.* ¶ 27. Since then, Plaintiff has filed additional complaints with the District charging Hall with racial discrimination and retaliation. *See id.* ¶¶ 43, 52. Plaintiff contends that the District never disciplined or took any other remedial action against Hall in response to these complaints, and

Case 2:14-cv-05509-PSG-MAN Document 46 Filed 12/12/14 Page 2 of 14 Page ID #:535

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

instead notified Hall of the complaints in violation of District policy. *See id.* ¶¶ 30-33, 44-46, 52-56.

Relevant to this motion, Hall allegedly committed the following acts in retaliation for these complaints: (1) he persuaded the District to initiate a knowingly meritless investigation of Paysinger's involvement in the operation of a private summer sports program ("the Academy") offered at BHHS facilities, *id.* ¶¶ 34-36; (2) he provided false and misleading information to the Los Angeles District Attorney's office (the "D.A.") so that it would investigate unfounded assertions that Paysinger had a conflict of interest in running the Academy at BHHS,[1] *id.* ¶¶ 37-49, 41; (3) he voted to deny Plaintiff requested promotions and contract extensions that were received by Caucasian administrators, *id.* ¶¶ 64-65; (4) he leaked a confidential draft of the District's investigative report regarding the Academy to the *Los Angeles Times*, *id.* ¶¶ 43, 46-50; (5) he subjected Plaintiff to racially discriminatory statements, for example, stating that "he did not trust Mr. Paysinger because of 'where he is from[,]'" *id.* ¶ 63; and (6) he subjected Paysinger's family to adverse employment decisions by voting to adopt an anti-nepotism rule within the district, *id.* ¶¶ 57-61.

On July 16, 2014, Plaintiff filed this lawsuit against the District and Hall. *See* Dkt. # 1. Plaintiff's FAC asserts seven claims, only two of which are against Hall: (1) violations of his civil rights under 42 U.S.C. § 1983, and (2) retaliation in violation of California Labor Code § 1102.5. Dkt. # 18; *see FAC* ¶¶ 103-116. Hall filed a motion to dismiss the two claims against him, asserting absolute and qualified immunity defenses to the § 1983 claim and a qualified immunity defense to the § 1102.5 claim. *See* Dkt. # 20. On October 17, 2014, the Court denied Hall's motion to dismiss the two claims against him, except as the motion pertained to Hall's voting for an anti-nepotism policy supporting his § 1983 claim. *See* Dkt. # 30.

Also on October 17, 2014, Hall filed this anti-SLAPP motion to strike the Cal. Labor Code § 1102.5 retaliation claim against him. *See* Dkt. # 28.

II. <u>Legal Standard</u>

California Code of Civil Procedure § 425.16 provides for a special motion to strike a "strategic lawsuit against public participation" ("SLAPP"). Such a motion, commonly called an "anti-SLAPP motion," provides courts with a remedy to dismiss at an early stage nonmeritorious litigation that challenges various kinds of protected speech. *See Kashian v. Harriman*, 98 Cal. App. 4th 892, 905 (2002); Cal. Code. Civ. Proc. § 425.16(b)(1). The anti-SLAPP statute is

---

[1] Plaintiff alleges that "[a]fter an exhaustive five-month investigation, the District Attorney's office advised Mr. Paysinger that there was no evidence of wrongdoing and that the case was closed." *Id.* ¶ 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

given full effect in federal court. *See U.S. v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

In ruling on an anti-SLAPP motion to strike, the court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). "The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Id.* (citing Cal. Code Civ. Proc. § 425.16(b)(1). An anti-SLAPP motion is "applicable to causes of action that result from a defendant's (1) oral or written statements 'made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law'; (2) any written or oral statement made in connection with an issue under consideration or review by a governmental body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a public place or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitution right of petition or of free speech in connection with a public issue or topic of public interest. *Martin v. Inland Empire Utilities Agency*, 198 Cal. App. 4th 611, 623 (2011) (quoting Cal. Code Civ. Proc. § 425.16(e)).

"If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.'" *Martin*, 198 Cal. App. 4th at 622 (quoting *Simpson Strong-Tie Co., Inc. v. Gore*, 29 Cal. 4th 12, 21 (2010)). "A plaintiff opposing an anti-SLAPP motion bears the burden to make a prima facie showing of facts that would support a judgment in plaintiff's favor." *See HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 211 (2004). In making this determination, the court considers "the pleadings, as well as 'supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" *Id.* (quoting Cal. Code Civ. Proc. § 425.16(b)(2)). "In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." *Id.* at 212.

"The court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. The trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward." *Id.* Accordingly, because this second step of the anti-SLAPP inquiry does not involve the weighing of evidence, the California Supreme Court has described it as an early stage "summary-judgment-like procedure." *See Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning *and* lacks even minimal merit – is a SLAPP, subject to being stricken under the statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).

III.   Discussion

Hall argues that the Court should strike Plaintiff's claim for retaliation under Cal. Labor Code § 1102.5 because it arises out of communicative activity protected by the anti-SLAPP statute and Plaintiff is unable to demonstrate the merit of this cause of action with evidence. *See Mot.* 12:11-16. The Court will engage in the two-step inquiry outlined by the anti-SLAPP statute and the California Supreme Court. *See* Cal. Code Civ. Proc. § 425.16(b)(1); *Equilon*, 29 Cal. 4th at 67. First, the Court will determine whether Hall has demonstrated that the § 1102.5 claim arises from acts that are protected under the anti-SLAPP statute. If the conduct is not protected, the inquiry ends and the Court will deny the motion. *See Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696, 705 (2011). If the conduct is protected under the statute, the Court will analyze whether Plaintiff has made a prima facie showing of *facts* to support prevailing on the claim. *Id.* at 702; *Navellier*, 29 Cal. 4th at 88.

   A.   Step One – Protected Conduct

Cal. Labor Code § 1102.5 forbids an employer (or any person acting on behalf of an employer) from retaliating against an employee for disclosing information to an agency or person that the employee reasonably believes discloses a violation of a statute, rule, or regulation. *See Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1384 (2005); Cal. Lab. Code § 1102.5(b). In opposition to this anti-SLAPP motion, Plaintiff claims that Hall violated § 1102.5 by committing the following acts in retaliation for Plaintiff's lodging complaints against him with the District:

   (1)   Electing not to give Plaintiff promotions and contract extensions;

   (2)   Causing the District's investigation of the Academy;

   (3)   Causing the D.A.'s criminal investigation of the Academy;

   (4)   Leaking a draft of the District's investigative report regarding the Academy to the *Los Angeles Times*;

   (5)   Making racially discriminatory statements to and about Plaintiff;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

    (6)    Causing the District to "reopen" its Academy investigation five months after it had closed;

    (7)    Threatening administrative action unless Plaintiff withdrew his complaints; and

    (8)    Causing the demotion of Plaintiff's brother.

*See Opp.* 9:5-22.

    Before reaching the protected conduct analysis, the Court will disregard acts six, seven, and eight because they are not alleged against Hall in the FAC. The allegations surrounding the "reopening" of the Academy investigation and other general threats of administrative action made just prior to the filing of this lawsuit are directed at the District alone in the FAC, not at Hall. *See FAC* ¶¶ 69-71. Similarly, the allegation that the District intends to demote Plaintiff's brother from Athletic Director to PE teacher does not implicate Hall in the FAC. *See id.* ¶ 58. Because Plaintiff does not direct these three allegations against Hall in the FAC, the Court will not evaluate the acts as forming a basis for the retaliation claim against him in analyzing this motion to strike.

    Accordingly, in the protected conduct analysis, the Court will only consider the first five acts identified by Plaintiff in both his briefing in response to this motion and his FAC. In determining whether the conduct "arose from" an act in furtherance of the right to free speech or petition, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Navellier*, 29 Cal. 4th at 89. Instead of analyzing each alleged act item-by-item, the Court should evaluate whether the anti-SLAPP statute applies to a cause of action by analyzing the "principal thrust or gravamen" of plaintiff's claim. *See Martinez v. Metabolife Intern., Inc.*, 113 Cal. App. 4th 181, 188 (2003). "[W]hen the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." *Id.*

    The "principal thrust or gravamen" of a claim is "the allegedly wrongful and injury-producing conduct that provides the foundation for the claim[]." *Castleman v. Sagaser*, 216 Cal. App. 4th 481, 490-91 (2013). The gravamen of the claim is not simply its title or form, such as "retaliation" or "defamation," rather, it is defined by the *acts on which liability is based*[.]" *See Renewable Resources Coalition, Inc. v. Pebble Mines Corp.*, 218 Cal. App. 4th 384, 396 (internal citation omitted); *see also Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 671 (2005) ("while we agree with the trial court that the

Case 2:14-cv-05509-PSG-MAN Document 46 Filed 12/12/14 Page 6 of 14 Page ID #:539

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | | Date | December 12, 2014 |
|---|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | | |

essence, or gravamen, of plaintiffs' claims is that [defendant] breached duties of care and loyalty to them, this conclusion does not obviate the need to examine the specific acts of wrongdoing plaintiffs allege…[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but rather, the defendant's activity that gives rise to his or her asserted liability…") (internal quotation omitted).

To ascertain the "injury-producing conduct" in Plaintiff's § 1102.5 retaliation claim against Hall, the Court must first identify the prohibited "injury" in the claim. Proving a § 1102.5(b) retaliation claim requires plaintiff to show "(1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *See Patten*, 134 Cal. App. 4th at 1384. Accordingly, the prohibited "injury" in a § 1102.5(b) claim is an "adverse employment action." Therefore, Hall's alleged conduct that produced the adverse employment actions at issue constitutes the "gravamen" of the retaliation claim against him.

An "adverse employment action" is an action that "materially affects the terms and conditions of employment." *Id.* at 1387-88 (internal quotation omitted). It "encompasses not only ultimate employment decisions, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Id.* (internal quotation omitted).

Although Plaintiff characterizes each the five acts themselves as adverse employment actions in the FAC, the actual injuries alleged are Plaintiff's not receiving his requested contract extension, the reputational harm caused by the Academy-related investigations and media coverage, and the trauma of being subjected to a racially hostile work environment. *FAC* ¶ 113. Thus, the acts by Hall that Plaintiff alleges produced these injuries are the "gravamen" of the cause of action and whether these acts were in furtherance of Hall's right to freedom of speech or to petition determine whether they are protected under the anti-SLAPP statute. The alleged injury-producing acts by Hall are his electing not to extend Plaintiff's contract, causing the District to investigate the Academy, alerting the D.A. to Plaintiff's potential criminal conflict of interest regarding the Academy, leaking a draft of the District's investigative report to the *L.A. Times*, and stating that he did not trust Plaintiff because of "where he is from." *See Opp.* 9:5-22; *FAC* ¶ 113. Thus, the Court should analyze these five acts to determine if the cause of action is based on protected activity under the anti-SLAPP statute.

A defendant meets the burden of showing that the alleged conduct is protected under the statute "by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)[.]" *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (internal quotation omitted). Prong two of § 425.16(e) protects "any written or oral

Case 2:14-cv-05509-PSG-MAN   Document 46   Filed 12/12/14   Page 7 of 14   Page ID #:540

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | | Date | December 12, 2014 |
|---|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | | |

statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Lab. Code § 425.16(e). Statements or communicative conduct regarding issues under consideration by the Board would qualify under the statute. *See Maranatha Corrections, LLC v. Dep't of Corrections and Rehabilitation*, 158 Cal. App. 4th 1075, 1085 (2008) (communications by the director of the Department of Corrections, a state executive agency, to the press regarding the termination of a service provider was protected under prong two); *see also Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1390, 1397 (2007) (a UC Regents employee's denial of plaintiff's harassment grievances was protected as communicative conduct under prong two).

Regarding Plaintiff's employment contract, Plaintiff claims that Hall specifically rejected his request for a three-year contract extension this year. *See Opp.* 17:1-5. Such action was necessarily taken through communications and voting in his role on the Board and thus was communicative conduct made in connection with the principal's terms of employment, an issue indisputably under consideration at official Board proceedings. That conduct fits the statutory protection and case law does not suggest otherwise. *See San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Ass'n*, 125 Cal. App. 4th 343, 353 (2004) ("[A]lthough we need not and do not reach the issue here because no individual Board member was sued by the District, we note that there is support for the argument that the protection accorded by the anti-SLAPP statute extends to statements made by public officials at an official public meeting, and perhaps also to their votes."). Thus, Hall's electing not to approve Plaintiff's requested three-year contract extension is protected activity under the anti-SLAPP statute.

Similarly, the extent and propriety of Plaintiff's involvement with the Academy, including whether to hire a law firm to investigate that involvement, were issues under consideration by the Board. *See Aljian Decl.*, Ex. M (August 27, 2013 Board Minutes). Any advocacy regarding whether to initiate this investigation or voting on the matter were thus communication actions connected with an issue under the Board's consideration and, thus, protected under prong two. Moreover, under prong two of Cal. Code Civ. Proc. § 425.16(e), there is no requirement that the statements or conduct occur *during* an official proceeding. Therefore, regardless of where Hall's alleged campaign to convince the Board to initiate an investigation of the Academy took place, his communicative acts are protected because they are connected with an issue under consideration by the Board. *See Maranatha*, 158 Cal. App. 4th at 1085 (communications need not be made during an official proceeding to be protected). Accordingly, the allegations regarding initiating the District's investigation into the Academy are protected by the anti-SLAPP statute.

The allegations regarding Hall's prompting the D.A. to criminally investigate Plaintiff's ties to the Academy are also protected because reporting potential illegal conduct to law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | | Date | December 12, 2014 |
|---|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | | |

enforcement is protected activity. *See Chabak v. Monroy*, 154 Cal. App. 4th 1502, 1512. Plaintiff's argument that Hall's letter to the D.A. alleging a potentially criminal conflict of interest is not protected because Hall's communication was a false report, and thus itself illegal, is not persuasive because Hall disputes the falsity of the report. *See Kenne v. Stennis*, 230 Cal. App. 4th 953, 967 ("when allegations of making false reports are controverted, they are insufficient to render that alleged conduct unlawful as a matter of law and outside the protection of section 425.16"). Thus, this conduct is also protected.

As to the alleged leaking of the District's draft investigative report to the L.A. Times, Hall concedes that such conduct is not protected under the anti-SLAPP statute. *See Mot.* 16:8-10.

Lastly, regarding the allegation that Hall said (to an un-alleged person or audience) that he did not trust Plaintiff because of "where he was from," Hall does not demonstrate that this statement is protected under the anti-SLAPP statute. *See Mot.* 12:17-16:21. Instead, Hall argues that the statement is not a "racial comment." *See Reply* 4:9-15. However, before analyzing whether the facts before the Court substantively make out a retaliation claim against Plaintiff, the Court's role is limited to determining whether the alleged acts underlying the claim constitute protected speech or petitioning conduct under the statute. *See City of Costa Mesa v. D'Alessio Investments*, LLC, 214 Cal. App. 4th 358, 371 (2013) ("The merits of [Plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis."). Because Hall fails to demonstrate that the speech is protected under one of the categories of § 425.16(e), the Court concludes that the statement attributed to Hall is not protected under the anti-SLAPP statute.

At this point in the analysis, the Court is left with a "mixed" cause of action – some of the conduct underlying the claim is protected under the anti-SLAPP statute (rejecting Plaintiff's contract extension, advocating that the District investigate the Academy, communicating with the D.A. regarding Plaintiff's potential criminal conflict of interest) while some of the conduct is unprotected (leaking information to the media, commenting that Hall did not trust Plaintiff because of "where he is from"). Although there is some disagreement in the case law, the Court will adhere to the majority trend that "where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is 'merely incidental' to the unprotected conduct." *See Peregrine*, 133 Cal. App. 4th at 672 (quoting *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 103 (2004)); *see also Kenne*, 230 Cal. App. 4th at 967. A different rule would allow plaintiffs to "frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" *See Fox Searchlight Pictures, Inc., v. Paladino*, 89 Cal. App. 294, 308 (2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

Here, the protected acts are not incidental to the unprotected acts. On the contrary, the protected acts are primary allegations supporting Plaintiff's retaliation claim. Of the claimed adverse employment actions that Hall allegedly inflicted on Plaintiff, the rejected contract extension injury relies entirely on protected activity and the reputational injury relies substantially on allegations that Hall spurred both the District and the D.A. to investigate Plaintiff for wrongdoing. Thus, the protected conduct is significant to the retaliation claim against Hall and is not incidental to the media leak and the statement regarding not trusting Plaintiff due to his origins. Accordingly, if Plaintiff fails to make a factual showing to support prevailing on his retaliation claim against Hall, the Court will strike the claim in its entirety.

    B.    <u>Step Two – Probability of Prevailing</u>

As discussed above, if the defendant first carries his burden to demonstrate that the alleged activity is protected, the "plaintiff…bears the burden to make a prima facie showing of facts that would support a judgment in plaintiff's favor." *See HMS Capital*, 118 Cal. App. 4th at 211 (2004). "In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." *Id.* at 212. "The court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. The trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward." *Id.* Somewhat contrary to the plain language of the statute, the plaintiff need actually not show a likelihood of success of the merits, only "minimal merit." *See Navellier*, 29 Cal. 4th at 94.

Under Cal. Labor Code § 1102.5(b), to "establish[] a prima facie case of retaliation…a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *See Patten*, 134 Cal. App. 4th at 1384.

With regard to the first requirement, Plaintiff offers his own declaration that he made complaints to the District about inappropriate and unlawful behavior by Hall as well as copies of those complaints. *Paysinger Decl.* ¶¶ 10, 12, 15-16; *Aljian Decl.*, Ex. E, Q, V. For the purposes of this motion, Hall does not argue that the complaints do not constitute protected reporting activity under § 1102.5. *See Mot.* 17:1-3.
    Plaintiff also presents an evidentiary showing to support the acts underlying his "adverse employment action" allegations that require this showing due to their anti-SLAPP protected status.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

To support the allegations pertaining to the denial of Plaintiff's requested three-year contract extension, Plaintiff presents his declaration in which he states that he requested the extension in March 2014 and it was denied. *See Paysinger Decl.* ¶ 18. Dr. Woods, the school's superintendent, also requested a three-year extension in or around March 2014 and his request was granted. *Id.* The Court will not consider Plaintiff's evidence regarding what he has been told about the Board's future intentions regarding the renewal of his contract because his statements on that issue are hearsay and he lacks personal knowledge as to the issue. *See id.* ¶ 19; *Defendant's Objections to Evidence*, ¶ 3.

Regarding the District investigation of the Academy, Plaintiff also offers some evidence supporting the allegations in his pleadings. Plaintiff's declaration explains that, after recommending that the Board should not renew the BHHS track coach's contract for the 2013-2014 school year, Hall contacted Plaintiff to request a meeting. *See Paysinger Decl.* ¶ 6. During that meeting that took place on June 26, 2013, Hall told Plaintiff that Hall should help reinstate the coach and that if Hall did so, he could avoid investigations of the Academy and the athletic department. *Id.* ¶ 7. Hall also raised the issue of alleged nepotism in the athletic department – Plaintiff's brother is BHHS' co-athletic director and his sister-in-law is the school's athletic trainer. *Id.* Plaintiff interpreted these statements as a threat to find a way to reinstate the coach or face investigations. *Id.* ¶ 8. Plaintiff told Hall that he would not cooperate. *Id.* ¶ 9.

Two days later, on June 28, 2013, as evidenced by a copy of the email, Hall sent an email to a District employee indicating that he was "pulling together a fact sheet for me and my colleagues regarding the athletic department" and asked for the following information:

- The fired track coach's annual compensation;

- The athletic directors' (including Plaintiff's brother's) salaries, teaching responsibilities, and athletic director responsibilities;

- The athletic secretary's name, salary, and duties;

- Plaintiff's sister-in-law's salaries, duties, and qualifications (i.e., "What qualifications does an athletic trainer require? Does she have these qualifications?");
- The assistant track coach's name, teaching duties, salary, track duties, and involvement in other sports;

- Information regarding the Academy ("A Beverly Hills Sports Camp is going on right now. Who runs this? Does this camp make a profit? Who benefits from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

> this profit?  The City?  BHUSD?  Individuals?  Who provides the insurance?  Do they use any facilities other than those at BHHS?").

*See Aljian Decl.*, Ex. D.  Plaintiff's declaration states that he learned about this email from the District employee who received it.  *See Paysinger Decl.* ¶ 9.  He interpreted the email as Hall following through on the "threats" that he made during their June 26th meeting, so on July 12, 2014, Plaintiff submitted a written complaint to the District outlining these happenings.  *See id.* ¶¶ 9-10; *Aljian Decl.*, Ex. E.  This complaint is the first claimed "protected" whistleblower action under § 1102.5.

Plaintiff also submits a copy of an email that Hall sent to Dr. Woods in response to learning about Plaintiff's complaint about him.  The email forwards Hall's June 28, 2013 email regarding the athletic department and the Academy inquiries and states:

> I've forwarded you the email that [the District employee] must have shown to Carter Paysinger.  Many of the questions came from the 76 emails I received from parents and students, and I feel I have every right to know this information…"

*See Aljian Decl.*, Ex. G.

Plaintiff also submits a print-out of the Board's August 27, 2013 Regular Meeting Minutes that indicates that Hall and three of the other four Board members voted to approve an agreement with the law firm that conducted the District's investigation into the Academy.  *See id.*, Ex. M.

Lastly, on this issue, Plaintiff offers a letter, dated October 14, 2013, that his attorney received from Dr. Woods responding to Plaintiff's first complaint.  *See id.*, Ex. N.  The letter indicates that Hall did have a concern with the way the administration handled a cheating incident that had involved his child a few years earlier when Plaintiff was principal and that Hall "expressed that he does not believe that Mr. Paysinger is honest and/or trust-worthy."  *Id.*  The letter stated that the District hired an attorney to investigate Plaintiff's complaint and she found that "Hall had a legitimate reason for requesting information regarding the Athletic Department…In particular, information provided by [the fired track coach] raised the issue of nepotism and issues relating to the Beverly Hills Sports Academy.  Once such issues were raised, it was reasonable for Mr. Hall and other Board Members to support the investigation of these issues."  *Id.*

Regarding the D.A. investigation, Hall freely admits that he wrote a letter to the D.A. "regarding the potential criminal conflict of interest on Mr. Paysinger's part in owning the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

Sports Academy and in failing to disclose it on the Form 700 Conflict of Interest form filed with the District." *Hall Decl.* ¶ 23.  To support his allegation that this letter was submitted in bad faith, with knowledge that Plaintiff had done nothing wrong, Plaintiff offers that Hall was familiar with the requirements of Form 700 disclosure statements because he was also required to submit them, as evidenced by copies of his 2011, 2012, and 2013 forms.  *See Aljian Decl.*, Ex. CC-EE.  On Hall's 2011 and 2013 forms, he disclosed his ownership of a company – Elevated Lab Press – that he did not disclose on the 2012 form.  *Id.*  The 2013 form also included a typewritten attachment from Hall stating that he was disclosing additional, unrequired financial interests simply in an abundance of caution.  *Id.*, Ex. EE.  Plaintiff also presents an article from the *Beverly Hills Weekly* from March 2014 regarding an apparent controversy about Hall's nondisclosure of his company on his 2012 Form 700.  *Id.*, Ex. FF.

     Based on this evidence before the Court, Plaintiff has presented at least some facts to support the first two elements of his retaliation case – that he engaged in protected activity and that Hall participated in acts that materially affected Plaintiff's employment.  However, Hall must also demonstrate a minimal evidentiary showing that a "causal nexus" existed between Plaintiff's making complaints about Hall and Hall's subsequent efforts to spur the District and D.A. to investigate Plaintiff's involvement with the Academy and to reject Plaintiff's contract extension request.

     Timing alone can be enough to demonstrate this causal nexus.  *See, e.g., Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 850 (9th Cir. 2004) ("When adverse employment actions closely follow complaints of discrimination, retaliatory intent may be inferred."); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity[,]" but an 18 month lapse is too long to support the inference by itself) (collecting cases).

     Here, Plaintiff presents evidence that he submitted his first complaint on July 12, 2013. *See Paysinger Decl.* ¶ 10.  The next month, on August 27, 2014, the District approved the hiring of a law firm to investigate the operations of the Academy. *See Aljian Decl.*, Ex. M.  Although the precise timing of Hall's letter to the D.A. is not established with evidence, Plaintiff claims that Hall contacted the D.A. in August or September 2013, *see Reply* 21:23-24, and given his attorney's declaration stating that the D.A. completed its investigation on March 10, 2014, *see Aljian Decl.* ¶ 41, the evidence supports that general timing.  Plaintiff presents evidence that he submitted additional complaints on January 30, 2014, February 12, 2014, and April 28, 2014. *See Paysinger Decl.* ¶¶ 12, 14-16.  Plaintiff also offers that he requested a three-year contract extension in March 2014, and that request was thereafter denied.  *Id.* ¶ 18.  Thus, Plaintiff has presented evidence that each of the claimed adverse employment actions followed closely after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

his various complaints about Hall to the District. Although some evidence cuts against the allegation that Hall's actions were in response to these complaints (*i.e.*, he seemingly began looking into investigating the Academy prior to Plaintiff's making his first complaint), the Court concludes that Plaintiff's evidence on the timing of the acts is sufficient to complete his minimal prima facie evidentiary showing of merit at this procedural posture.

However, Hall also argues that certain immunities absolutely bar the retaliation claim against him for these acts. *See Mot.* 17:6-18. In step two of the anti-SLAPP analysis, in addition to demonstrating that the claim is supported by a sufficient prima facie showing of facts, the plaintiff must demonstrate that the complaint is "legally sufficient." *Navellier*, 29 Cal. 4th at 88-89. Accordingly, as it would be on a summary judgment motion, it is appropriate for the Court to consider whether Hall has presented affirmative defenses that completely bar his liability as to the asserted claim.

Hall argues that Cal. Civ. Code § 47(a)-(b) render his statements in Board meetings and his statements and conduct surrounding the District's and D.A.'s investigations into Plaintiff's potential Academy conflict of interest absolutely privileged. *See Mot.* 17:6-11; 15:10-14. He also argues that his communication with the D.A. is privileged, presumably under Cal. Civ. Code § 47(c), because Plaintiff cannot make a factual showing that the communications were made with[out] reasonable cause or malice. *Id.* 17:16-18. The Court did not previously address California's privilege law in its October 17, 2014 order denying Hall's motion to dismiss because these privileges were not raised.[2] *See* Dkt. # 30. Hall provides very limited support for his privilege arguments absent referring to the statutes generally and the Court will not make Hall's arguments for him. *See Mot.* 13: 20-14:12; 17:6-18. Plaintiff responds to Hall's claims to privilege in part, and the Court concludes that this showing is sufficient to demonstrate that the retaliation claim is not entirely barred by California privilege law and thus survives the anti-SLAPP motion to strike. *See Opp.* 22:25-23:25.

Regarding Hall's communication with the D.A., Hall claims that Plaintiff does not have any evidence that the communications were made with malice. *See Mot.* 17:16-18. Plaintiff explains that if Hall's communication was made in bad faith, it would not be protected under California privilege law. *See Opp.* 23:24, n.14 (citing *Devis v. Bank of America*, 65 Cal. App. 4th 1002, 1008 (2004). Moreover, malice is usually proven with circumstantial evidence and Plaintiff recites his evidentiary offering on this issue. *See, e.g., Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301-02 (9th Cir. 1999). Plaintiff offers evidence of Hall's own Form 700 reporting history which he claims illustrates that Plaintiff knew

---

[2] Hall's previous motion focused primarily on the 42 U.S.C. § 1983 claim against him, and California privilege law is inapplicable as a bar against that claim. *See Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5509 PSG (Rzx) | Date | December 12, 2014 |
|---|---|---|---|
| Title | Carter Paysinger v. The Beverly Hills Unified School District, *et al.* | | |

precisely what was required to be disclosed to the District. Therefore, with knowledge that Plaintiff was not required to disclose his ownership interest in the Academy, Hall fabricated concern about this nondisclosure in a letter to the D.A. to maliciously retaliate against Plaintiff. Although the evidence could support an alternate explanation (*i.e.*, perhaps a reasonable belief that disclosures about the Academy should be treated differently than those about Hall's company due to the Academy's close affiliation ties to BHHS), Plaintiff is only required to support the sufficiency of his claim with minimal facts at this procedural stage, and the Court concludes that he has shown some evidence of malice on the part of Hall.

Although some of the primary acts underlying Plaintiff's § 1102.5 retaliation claim against Hall are protected under the anti-SLAPP statute, Plaintiff has carried his burden of making a minimal evidentiary showing as to the factual and legal sufficiency of the claim to defeat the anti-SLAPP motion.

IV.   Conclusion

Based on the foregoing, the Court DENIES Defendant's anti-SLAPP motion to strike.

**IT IS SO ORDERED.**